SO ORDERED.

SIGNED this 01 day of November, 2006.



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICHARD MORGAN STEWART, IV, | ) | Case No. 04-16838 |
| VALERIE ANN STEWART, | ) | Chapter 7 |
| Debtors. | ) | |
| J. MICHAEL MORRIS, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 05-5090 |
| | ) | |
| SNAP ON CREDIT, L.L.C., f/k/a | ) | |
| SNAP-ON CREDIT CORPORATION, | ) | |
| BRIAN UNRUH, | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

In this adversary proceeding, the trustee seeks to avoid the purchase-money security interest of defendant Snap On Credit, L.L.C. (Snap On) in certain tools purchased by the debtor pre-petition, challenging the adequacy of Snap On's perfection of its security interest. This matter raises the

1

same "correct legal name" issue that the Court recently addressed in *Parks v. Berry (In re Berry)*: whether the secured creditor's reference in a financing statement to something less than the debtor's "correct legal name" renders that financing statement sufficiently seriously misleading that it fails to give notice to third parties like the trustee of the creditor's interest in the debtor's property.[1]

Jurisdiction

The Court has jurisdiction of this core proceeding under 28 U.S.C. § 157(b)(2)(K) and § 1334(b).

Factual Statement

The parties stipulated to all the relevant facts before the Court and that stipulation is incorporated herein by reference.[2] The important facts may be summarized as follows.[3] On March 12, 2002, debtor applied to Snap-On for business credit. He signed the application as Richard M. Stewart. On March 13, 2003, debtor purchased tools on credit and signed a Retail Instalment Contract containing a security agreement to secure repayment of $2,578.68. Debtor signed the contract as Rick Stewart. On March 24, 2003, Snap-On filed a financing statement with the Kansas Secretary of State naming the debtor as "Richard Stewart." Debtor purchased two additional sets of tools on credit between these dates and the date of his petition, December 15, 2004. Debtor listed his name as "Stewart IV, Richard Morgan" on the bankruptcy petition in the last name first format indicated by the bankruptcy petition form. Debtor signed the bankruptcy petition as "Richard

---

[1] *See* 2006 WL 2795507 (Bankr. D. Kan. Sept. 26, 2006) (Nugent, C.J.).

[2] Dkt. 28.

[3] Defendant Brian Unruh, the Snap-On dealer involved in the transactions, was previously dismissed from this adversary proceeding leaving Snap-On as the lone defendant. *See* Dkt. 29.

2

Morgan Stewart IV." On December 29, 2004, Stewart returned the tools to Snap-On's representative after signing a written surrender agreement in which Snap-On valued the returned tools at $2,881.75. Snap-On did not have stay relief. When the trustee conducted an official search of the Kansas Secretary of State's office for Snap-On's financing statement using Stewart's correct name, "Stewart IV, Richard Morgan," the official search did not yield the financing statement on file.

Analysis

As this Court stated in *Berry*, the Kansas Supreme Court's decision in *Pankratz Implement Co. v. Citizens Nat. Bank*,[4] based on the analysis by the United States Bankruptcy Appellate Panel for the Tenth Circuit in *Clark v. Deere and Company, et al (In re Kinderknecht)*,[5] removes all doubt that with Kansas' adoption of revised Article Nine of the Uniform Commercial Code, the "diligent searcher rule" no longer applies in Kansas. Now the sole test of whether a financing statement is "seriously misleading" is whether a searcher using the individual debtor's "correct legal name," presumably the name indicated on a birth certificate or a name otherwise maintained in the public records (e.g., social security card, driver's license), could locate the financing statement in question. Here the trustee has presented evidence of an official search under "Stewart IV, Richard Morgan" that did not locate Snap-On's financing statement.

Under the standardized search logic used by the Kansas Secretary of State's office (the "filing office"), "human judgment shall not play a role." That logic, set out in KAN. ADMIN. REG. § 7-17-22(b)(4) (2003), disregards suffixes. It also treats middle names by equating middle initials

---

[4] 281 Kan. 209, 130 P.3d 57 (2006).

[5] 308 B.R. 71 (10th Cir. BAP 2004).

3

with all names beginning with those initials and treats the absence of a middle name or initial as all middle names or initials.[6] In this case, Snap-On filed a financing statement naming debtor "Richard Stewart." The trustee requested an official search in the name of "Stewart IV, Richard Morgan," the name listed by debtor on his bankruptcy petition. As the Court reads the search logic parameters, the search engine would drop the suffix "IV" and search for "Stewart, Richard Morgan." The specification of the middle name "Morgan" likely caused the engine to not locate "Stewart, Richard." Were human judgment still a factor in UCC searches, a diligent searcher would presumably cast the widest possible net by looking for "Stewart, Richard" which would, under the standardized search logic parameters, yield this financing statement. But the revised UCC, as implemented by the Kansas regulations, disdains the human judgment factor. Since the standardized search logic parameters control, only a financing statement containing Stewart's full legal name would be yielded by a search under that name as it is set out on his petition.

Since the search report generated from the trustee's search request did not yield Snap-On's financing statement, it is seriously misleading under KAN. STAT. ANN. § 84-9-506(b).[7] Snap-On's security interest falls victim to the trustee's power as a lien creditor under KAN. STAT. ANN. § 84-9-317 and his hypothetical lien creditor rights under 11 U.S.C. § 544(b).

With respect to Snap-On's alleged violation of the automatic stay, the stipulations of fact do not establish that Snap-On had knowledge or notice of Stewart's bankruptcy filing when it took possession of the tools on December 29, 2004. While a technical stay violation occurred, there is no record to support a finding that Snap-On acted as it did with the requisite willfulness that would

---

[6] KAN. ADMIN. REG. § 7-17-22(b)(8) (2003).

[7] *See* Ex. G attached to the Stipulations, Dkt. 28; KAN. ADMIN. REG. § 7-17-23 (2003).

4

warrant the imposition of a sanction.  The trustee is therefore entitled to recover the value of the returned tools, $2,881.75,  interest from December 29, 2004 until paid, plus his costs.  Because the trustee has yet to seek a sanction or assert a willful violation of the stay, the Court declines to award attorneys fees until such time as an appropriate application and proof is made.

Judgment should therefore be entered in favor of the trustee and against Snap-On, avoiding Snap-On's lien and preserving same for the benefit of the estate under § 551, ordering a turnover of the tools in question or the amount of $2,881.75 plus interest thereon from December 29, 2004 until paid, and for costs.   A Judgment on Decision will issue this day.

# # #